IN THE COURT OF APPEALS OF TENNESSEE
AT NASHVILLE
August 29, 2017 Session

**JENNIFER STEAKIN v. DANIEL STEAKIN**

**Appeal from the Circuit Court for Sumner County**
**No. 2009-CV-628   Dee David Gay, Judge**

———————————————————

**No. M2017-00115-COA-R3-CV**

———————————————————

This appeal arises from the modification of a parenting plan in a post-divorce action. The original 2010 parenting plan awarded the parties equal parenting time. When the parties' only child started school in 2012, the parents informally modified the parenting schedule so that Father had parenting time every other weekend and the parents split the holidays equally. In 2015, Mother commenced this action seeking court approval of the informal parenting schedule. The trial court granted Mother's petition to modify and adopted Mother's proposed parenting plan. Father appeals, claiming the trial court erred by, *inter alia*, failing to make findings of fact as required by Tenn. R. Civ. P. 52.01, miscalculating Father's parenting time, awarding Mother sole education and non-emergency healthcare decision-making authority, ordering the child to attend a certain elementary school, awarding Mother a judgment for her attorney's fees, and assessing post-judgment interest at 5.5%. Finding no error, we affirm the trial court in all respects. We also find that Mother is entitled to recover reasonable and necessary attorney's fees incurred on appeal pursuant to Tenn. Code Ann. § 36-5-103(c).

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Affirmed**

FRANK G. CLEMENT JR., P.J., M.S., delivered the opinion of the Court, in which RICHARD R. DINKINS and W. NEAL MCBRAYER, JJ., joined.

James Lee Widrig, Megan Ross Bain, and Tarsila Reybitz Crawford, Nashville, Tennessee, for the appellant, Daniel Steakin.

Georgina Kay Hughes, Mt. Juliet, Tennessee, for the appellee, Jennifer Steakin.

# OPINION

Jennifer Steakin ("Mother") and Daniel Steakin ("Father") are parents to one minor child. The parties divorced in 2010, and the Final Decree of Divorce adopted a Permanent Parenting Plan, which afforded the parents with equal parenting time. Under the plan, Father had the child three days one week and four days the next. The parties followed this schedule until the child started school in August 2012. Because the parents were living in different counties at the time and Father's work schedule had changed, Father requested that they modify the parenting schedule to allow Father parenting time every other weekend during the school year, alternate weeks in the summer, and share holidays equally. Mother agreed to the schedule Father proposed, and they followed this schedule without issue, and without court approval, over the next three years.

On April 2, 2015, Mother filed a Petition to Modify Permanent Parenting Plan and Child Support to obtain court approval of the plan they had been following since the child started school in 2012. She alleged that Father's relocation from Gallatin to Portland, Tennessee, changes to Father's work schedule, and the fact that Mother and the minor child lived in Wilson County where the child attended school, constituted material changes in circumstances that warranted the modification. Mother also relied on the fact that the parties had not been following the parenting plan since the parties' minor child started school in August 2012.

Under Mother's proposed parenting plan, Mother would have 277 days of parenting time per year, and Father would have 88 days. Specifically, Father would continue to have parenting time every other weekend from 6:00 p.m. on Friday until 6:00 p.m. on Sunday, the parents would alternate holidays, equally divide fall and spring breaks, and divide the Christmas break so that the child would spend the first period of the break with one parent, defined from the day and time school dismissed through December 24 at 6:00 p.m., and then spend the remainder of the break with the other parent. In addition, the parents would alternate weeks during the summer. The proposed plan essentially memorialized the parenting schedule the parties had been following for the past three years without issue. Mother also requested she be granted sole decision-making authority on the child's education and non-emergency healthcare decisions.

The petition to modify was heard September 29, 2016, and the court heard extensive testimony from both parents. Mother testified that other than summer break, her proposed schedule is what the parties had already been following. And in fact, Mother's proposed summer schedule actually gave Father more time than he had been receiving.

Mother requested that the trial court order their child to continue attending W.A. Wright Elementary in Mount Juliet, Tennessee, where the child had attended for the past two years. Even though the child was not zoned for this school, Mother testified that this was in the child's best interest because the child is able to ride the bus home from school

to his grandmother's, whose house is located in that school zone. The child's grandmother provides after-school care for the minor child. At trial, Father made no objection to the child being ordered to attend the school.[1]

Mother also requested sole decision-making authority for the child's education and nonemergency healthcare decisions. She testified in great detail about her involvement in the minor child's education and healthcare stating, in pertinent part,

> I'm there every day. I go to the school functions, to meetings. I take him to school. I'm there after school. I do the homework. I enroll him in school and take him shopping for school supplies. I'm the consistent one that's there.

Mother discussed the progress the child has made in school, and the ongoing IEP meetings she attends to support the child's special education needs. Mother also testified extensively about doctor's appointments she has attended over a long period of time to address her child's ADHD diagnosis, and Mother emphasized the child's anxieties brought on from not having a normal, consistent schedule. Mother reasoned that she is in a better position to make decisions on the child's behalf regarding his education and nonemergency healthcare needs because she is the parent most often present in the ongoing care needs of their child. Mother conceded that all other decision making would remain joint, as specified in both the original 2010 and proposed parenting plans.

Father did not propose an alternate parenting plan, nor did he object to Mother's calculation of days in the proposed parenting plan, or Mother's proposed Holiday schedule. Nevertheless, Father maintained that it was in the child's best interest for the parents to have equal parenting time, as specified in the original 2010 parenting plan, despite the fact that Father was the one who initially requested a modification to the every-other-weekend schedule the parents have followed for three years. Father objected to granting Mother sole authority for the child's education and nonemergency healthcare decisions, contending that all decision making should remain joint as specified in the parties' 2010 parenting plan.

In its ruling from the bench and as directed in the Final Order entered December 7, 2016, the trial court adopted Mother's proposed parenting plan, which essentially memorialized the schedule the parents had followed for the past three years. The

---

[1] One of the ten issues Father raised on appeal was that the trial court erred by ordering the child to attend W.A. Wright Elementary School. Because Father explicitly stated at trial that he did not object to the child being ordered to continue to attend W.A. Wright Elementary School, this issue is waived on appeal, and we need not address it. *See Simpson v. Frontier Cmty. Credit Union*, 810 S.W.2d 147, 153 (Tenn. 1991); *see also Lovell v. Metropolitan Government*, 696 S.W.2d 2 (Tenn. 1985); *Lawrence v. Stanford*, 655 S.W.2d 927 (Tenn. 1983).

modified parenting plan awarded Mother 277 days per year, and 88 days per year to Father. The plan specified that the parents would evenly divide the fall, spring, Christmas, and summer breaks. The trial court also ordered a modification of child support, granted Mother sole decision-making authority on education and non-emergency healthcare decisions, and awarded Mother attorney's fees. Father timely appealed.

## ANALYSIS

Father raises a plethora of issues on appeal.[2] We believe the issues should be considered in the following fashion to afford a more appropriate analysis of each:

1. Whether the trial court failed to make sufficient specific findings of fact and conclusions of law as required by Tenn. R. Civ. P. 52.01.
2. Whether a material change in circumstances was established.
3. Whether the trial court conducted an appropriate best interest analysis.

---

[2] The issues as stated in Father's brief read:

A. Whether the trial court erred in not make specific findings of fact and conclusions of law.

B. Whether the trial court erred failed to consider other changes to determine if those would be a Material Change in Circumstance since the parties stopped following the court ordered parenting plan.

C. Whether the trial court erred in not conducting a Best Interests Analysis.

D. Whether the trial court erred in its calculation of the number of days that Father is responsible for the care of the minor child for purposes of determining his support obligation under the Tennessee Child Support Guidelines.

E. Whether the trial court erred in approving a Permanent Parenting Plan which set out holidays which were not specifically ordered by the Court, and which did not contain all the holidays which are standardly awarded to parents.

F. Whether the trial court erred in ordering the Mother make sole education and nonemergency healthcare decisions.

G. Whether the trial court erred in ordering the minor child to attend W. A. Wright Elementary School.

H. Whether the trial court erred in entering the Final Order which awarded a judgment for Mothers attorney fees at a fixed interest of 5.5%, and whether Mother's award of attorney fees should be upheld.

I. Whether the trial court showed a bias and/or considered a parties marital status or the number of their marriages to determine which parent should be the Primary Residential Parent. Additionally, whether the trial court erred in using his knowledge of Father's other case before it to determine which parent in this cause should be the Primary Residential Parent in this cause.

J. Whether the trial court erred in ordering a parenting schedule which suited the Mother and not the minor child best interests, and whether the parenting schedule ordered by the trial court is the maximum the Father can participate in the life of the child.

4. Whether the trial court abused its discretion in crafting the Permanent Parenting Plan that awarded Mother sole authority for education and nonemergency healthcare decisions.
5. Whether the trial court erred in its calculation of the days Father is responsible for the care of the minor child in setting child support.
6. Whether the trial court erred in awarding Mother her attorney's fees and assessing interest at 5.5%.

As for Mother, she seeks to recover her attorney's fees and costs incurred in this appeal.

I. FINDINGS OF FACT AND CONCLUSIONS OF LAW

Father asserts that the trial court erred by not making sufficient specific findings of fact and conclusions of law as required by Tenn. R. Civ. P. 52.01.

It is well settled that in bench trials, courts must make findings of fact and conclusions of law to support their rulings. Rule 52.01 of the Tennessee Rules of Civil Procedure provides, in pertinent part:

> In all actions tried upon the facts without a jury, the court shall find the facts specially and shall state separately its conclusions of law and direct the entry of the appropriate judgment. The findings of a master, to the extent that the court adopts them, shall be considered as the findings of the court. If an opinion or memorandum of decision is filed, it will be sufficient if the findings of fact and conclusions of law appear therein.

*Id.*

The underlying rationale for the Rule 52.01 mandate is that it facilitates appellate review by "affording a reviewing court a clear understanding of the basis of a trial court's decision," and enhances the authority of the trial court's decision in the absence of findings of fact and conclusions of law; without which, "this court is left to wonder on what basis the court reached its ultimate decision." *In re Estate of Oakley*, No. M2014-00341-COA-R3-CV, 2015 WL 572747, at *10 (Tenn. Ct. App. Feb. 10, 2015) (citing *Lovlace v. Copley*, 418 S.W.3d 1, 35 (Tenn. 2013)). Further, compliance with the mandate of Rule 52.01 affords the reviewing court a clear understanding of the basis of the trial court's reasoning. *Gooding v. Gooding*, 477 S.W.3d 774, 782 (Tenn. Ct. App. 2015); *In re Zaylen R.*, No. M2003-00367-COA-R3-JV, 2005 WL 2384703, at *2 (Tenn. Ct. App. Sept. 27, 2005).

There is no bright-line test to assess the sufficiency of the trial court's factual findings. The general rule is that "the findings of fact must include as much of the

subsidiary facts as is necessary to disclose to the reviewing court the steps by which the trial court reached its ultimate conclusion on each factual issue." *In re Estate of Oakley*, 2015 WL 572747, at *10 (quoting *Lovlace*, 418 S.W.3d at 35).

Generally, when a trial court fails to explain the factual basis for its decisions pursuant to Rule 52.01, the appropriate remedy is to "vacate the trial court's judgment and remand the cause to the trial court for written findings of fact and conclusions of law." *Manning v. Manning*, 474 S.W.3d 252, 260 (Tenn. Ct. App. 2015)(quoting *Lake v. Haynes,* No. W2010–00294–COA–R3–CV, 2011 WL 2361563, at *1 (Tenn. Ct. App. June 9, 2011)). However, when faced with a trial court's failure to make specific findings, this court has previously held that the appellate courts may "soldier on" when the case involves only a clear legal issue, or when the court's decision is "readily ascertainable." *Simpson v. Fowler*, No. W2011-02112-COA-R3-CV, 2012 WL 3675321, at *4 (Tenn. Ct. App. Aug. 28, 2012)(internal citations omitted). In these instances, we are permitted to conduct a de novo review of the record to determine where the preponderance of the evidence lies. *Gooding*, 477 S.W.3d at 783 (Tenn. Ct. App. 2015). *See also Lovlace,* 418 S.W.3d at 36; *Ganzevoort v. Russell,* 949 S.W.2d 293, 296 (Tenn. 1997); *Nashville Ford Tractor, Inc. v. Great Am. Ins. Co.*, 194 S.W.3d 415, 424 (Tenn. Ct. App. 2005).

In this case the trial court made few specific findings of fact, which would be problematic if the material facts were disputed. However, by considering the findings of fact that were made along with the parties' testimony, which is essentially uncontested, we find the record sufficiently discloses the steps by which the trial court reached its ultimate conclusions. *See In re Estate of Oakley*, 2015 WL 572747, at *10; *see also Lovlace*, 418 S.W.3d at 35.

## II.  MATERIAL CHANGE IN CIRCUMSTANCES

Father argues that the trial court erred in its process for establishing a material change in circumstances by failing to consider additional factors which would also evince a material change in circumstances.

Modification of an existing parenting plan requires a two-step analysis. *See Armbrister v. Armbrister*, 414 S.W.3d 685, 697 (Tenn. 2013) (citing Tenn. Code Ann. § 36-6-101(a)(2)(B)-(C)); *see also Boyer v. Heimermann*, 238 S.W.3d 249, 259 (Tenn. Ct. App. 2007). In the context of a petition to modify a residential parenting schedule, the petitioner must "prove by a preponderance of the evidence a material change of circumstance affecting the child's best interest." Tenn. Code Ann. § 36-6-101(a)(2)(C).

> A material change of circumstance for purposes of modification of a residential parenting schedule may include, but is not limited to, significant changes in the needs of the child over time, which may include changes

- 6 -

relating to age; significant changes in the parent's living or working condition that significantly affect parenting; **failure to adhere to the parenting plan**; or other circumstances making a change in the residential parenting time in the best interest of the child.

*Id*. (emphasis added). The statute "sets a very low threshold for establishing a material change of circumstances" when the court is merely changing a parenting schedule, as distinguished from changing the primary residential parent. *Armbrister*, 414 S.W.3d at 703 (quoting *Rose v. Lashlee*, No. M2005–00361–COA–R3–CV, 2006 WL 2390980, at *2 n. 3 (Tenn. Ct. App. Aug.18, 2006)). A material change of circumstance for purposes of modifying a residential parenting schedule includes, but is not limited to, failure to adhere to the parenting plan. Tenn. Code Ann. § 36-6-101(a)(2)(C).

It is undisputed that the parents had not been following the existing parenting plan once the minor child started school in August 2012. Additionally, the evidence is undisputed that Father's work schedule had changed, he moved from Gallatin to Portland, Tennessee, and the minor child had been spending considerably more time with Mother since the parties informally modified their parenting plan in 2012. Given the low threshold for establishing a material change of circumstances for a proposed modification to a residential parenting schedule, we affirm the trial court's determination that a material change of circumstance was proven by a preponderance of the evidence.

### III.    BEST INTEREST ANALYSIS

Father contends the trial court failed to conduct an appropriate best interest analysis.

If the court finds a material change in circumstances, the trial court must then determine whether a modification of the parenting plan is in the child's best interest. Tenn. Code Ann. § 36-6-101(a)(2)(C); *Armbrister*, 414 S.W.3d at 697-98,705. A non-exclusive list of fifteen factors to be considered, to the extent relevant, is set forth in Tenn. Code Ann. § 36-6-106(a). Determining a child's best interest is a fact-sensitive inquiry, and, depending upon the significance of certain facts, a single factor can control the outcome of this determination. As we have explained:

Ascertaining a child's best interests does not call for a rote examination of each of [the relevant] factors and then a determination of whether the sum of the factors tips in favor of or against the parent. The relevancy and weight to be given each factor depends on the unique facts of each case. Thus, depending upon the circumstances of a particular child and a particular parent, the consideration of one factor may very well dictate the outcome of the analysis.

*In re Marr*, 194 S.W.3d 490, 499 (Tenn. Ct. App. 2005).

The trial court did not specify which factors it considered in making a best interest analysis, but the following finding, which appears in the Final Order, is significant:

9. The Court finds the schedule of every other weekend that the parties have been following has been working since 2012. It appears to the Court there were no issues raised until raised in this courtroom. And there is considerable proof that the Father is the one who asked that the schedule be changed to every other weekend. Therefore, the modification requested in Mother's petition is granted.

10. The Court finds by a preponderance of evidence that . . . the actual schedule the parties have been following since 2012 is in the best interest of the minor child.

Upon review of the entire record, it is apparent that the trial court found that the continuity in the child's life was a factor that weighed heavily in favor of modification. The record demonstrates Mother "has performed the majority of parenting responsibilities relating to the daily needs of the child" since 2012. Tenn. Code Ann. § 36-6-106(a)(1). Mother testified in great detail about her involvement in the minor child's education. At trial she stated,

I'm there every day. I go to the school functions, to meetings. I take him to school. I'm there after school. I do the homework. I enroll him in school and take him shopping for school supplies. I'm the consistent one that's there.

Mother also testified extensively about doctor's appointments she has attended over a long period of time to address her child's ADHD diagnosis, and Mother emphasized the child's anxieties brought on from not having a normal, consistent schedule. This testimony further supports defining Mother as the primary caregiver "who has taken the greater responsibility for performing parental responsibilities," Tenn. Code Ann. § 36-6-106(a)(5), and reiterates "[t]he importance of continuity in the child's life and the length of time the child has lived in a stable, satisfactory environment." Tenn. Code Ann. § 36-6-106(a)(10).

It is also apparent that the trial court considered both "the importance of continuity in the child's life" and maintaining "a stable, satisfactory environment" as factors weighing heavily in favor of a modification to the parenting schedule. *See* Tenn. Code Ann. § 36-6-106(a)(10). The trial court found that the every other weekend schedule that the parties were following had been working since 2012, that there had been no issues raised by Father until the final hearing, and that there was considerable proof that Father

is the one who asked that the schedule be changed to every other weekend in the first place. Next, the trial court found that W.A. Wright is where the child had been attending school and the parties agreed on the school, so that is where the child would stay. The trial court also found that the maternal grandmother had been providing child care, and the court found that there had been no disagreement or any problems with that arrangement. Finally, the trial court found that modifying the current parenting plan to reflect the actual schedule the parties had been following since 2012 was in the best interest of the minor child.

The evidence preponderates in favor of the foregoing best interest findings. Accordingly, we affirm the trial court's judgment that a modification of the permanent parenting plan was in the best interest of the minor child.

## IV.    ABUSE OF DISCRETION

We next consider whether the trial court abused its discretion in crafting the permanent parenting plan and awarding Mother sole decision-making authority for education and nonemergency healthcare decisions.

The scope of review to be employed by an appellate court in reviewing a trial court's factual determinations in matters involving child custody and parenting plan developments is very limited. *See C.W.H. v. L.A.S.*, No. E2015-01498-SC-R11-JV, __ S.W.3d __, 2017 WL 6462395, at *4 (Tenn. Dec. 19, 2017). As our Supreme Court emphasized in this decision:

> [A] trial court's determinations of whether a material change in circumstances has occurred and whether modification of a parenting plan serves a child's best interests are factual questions. Thus, appellate courts must presume that a trial court's factual findings on these matters are correct and not overturn them, unless the evidence preponderates against the trial court's findings.

*Armbrister*, 414 S.W.3d at 692 (citations omitted). Indeed, trial courts are in a better position to observe the witnesses and assess their credibility; therefore, trial courts enjoy broad discretion in formulating parenting plans. *Id*. at 693 (citing *Massey-Holt v. Holt*, 255 S.W.3d 603, 607 (Tenn. Ct. App. 2007)). "Thus, determining the details of parenting plans is 'peculiarly within the broad discretion of the trial judge.' " *Id*. (quoting *Suttles v. Suttles*, 748 S.W.2d 427, 429 (Tenn. 1988)). Appellate courts should not overturn a trial court's decision merely because reasonable minds could reach a different conclusion. *Eldridge v. Eldridge*, 42 S.W.3d 82, 85 (Tenn. 2001).

On appeal, we review a trial court's decision regarding parenting schedules for an abuse of discretion. *Armbrister*, 414 S.W.3d at 693 (citing *Eldridge*, 42 S.W.3d at 88). This Court stated, "'An abuse of discretion occurs when the trial court ... appl[ies] an incorrect legal standard, reaches an illogical result, resolves the case on a clearly erroneous assessment of the evidence, or relies on reasoning that causes an injustice.'" *Id*. (quoting *Gonsewski v. Gonsewski*, 350 S.W.3d 99, 105 (Tenn. 2011)); *see also Kelly v. Kelly*, 445 S.W.3d 685, 691-92 (Tenn. 2014) (applying same standard announced in *Armbrister*—a case involving modification of a residential parenting schedule—to a trial court's initial primary residential parenting designation). "Appellate courts should reverse custody decisions 'only when the trial court's ruling falls outside the spectrum of rulings that might reasonably result from an application of the correct legal standards to the evidence.'" *Kelly*, 445 S.W.3d at 696 (quoting *Armbrister*, 414 S.W.3d at 693); *see Eldridge*, 42 S.W.3d at 88.

*C.W.H. v. L.A.S.*, __ S.W.3d __, 2017 WL 6462395, at *4 (Tenn. Dec. 19, 2017).

Father argues, *inter alia*, that the parenting plan adopted by the trial court is inconsistent with the trial court's oral ruling. Specifically, Father states that the trial court announced that "holidays [would] be evenly split;" however, the adopted parenting plan only addressed New Year's Day, Easter, Mother's Day, Father's Day, July 4th, Labor Day, Thanksgiving and Christmas, and neglected to address other holidays such as President's Day, Martin Luther King Day, Halloween, and the child's birthday. Father also takes issue with the minutiae of the trial court's oral ruling because the adopted parenting plan does not actually divide the Christmas break evenly. Rather, the parenting plan specifies that the minor child will spend the first period of the break, defined from the day and time school dismisses (which is different every year) until December 24 at 6:00 p.m., with one parent and then spend the remainder of the break with the other parent. Father points out this results in an uneven split of time for the Christmas break. Father also brings up details in the parenting plan that were not orally addressed by the trial court including, *inter alia*, fall and spring breaks, the specific division of holidays in odd and even years, and the trial court's failure to declare that it was adopting Mother's proposed parenting plan as submitted.

We find Father's arguments to be unpersuasive for several reasons. From our review of the record, it is evident that even though the trial court did not specifically state as such in its oral ruling, the trial court adopted Mother's proposed parenting plan into its Final Order. Mother's proposed parenting plan was the only plan introduced into evidence at trial. The record shows that the trial court asked for a copy of the proposed plan before the parties began their testimony, followed along, and reviewed the proposed parenting plan as the parties testified. When the trial court referred to "equally dividing

the holidays," it is apparent that it was referencing the holidays specified in the proposed plan. Furthermore, as our Tennessee Supreme Court has stated, "the court speaks through its order, not through the transcript." *In re Adoption of E.N.R.*, 42 S.W.3d 26, 31 (Tenn. 2001).

Father also contends the trial court erred in awarding Mother sole decision-making authority for education and nonemergency healthcare decisions with regard to the minor child.

Mother testified that the minor child was with her the majority of time, so she needed the ability to make quick decisions. The trial court found that as the minor child gets older, there would be a need for immediate decisions sometimes on non-essential education needs and non-essential health needs. The trial court reasoned that Mother had a better understanding of the minor child's education and medical needs, and determined that it was in the best interest of the minor child for Mother to make education and non-emergency health decisions as she sees fit. The evidence in the record does not preponderate against the trial court's finding that Mother had a better understanding of the child's educational and medical needs or that it was in the child's best interest for Mother to make these decisions.

For the foregoing reasons, we find that the trial court did not abuse its discretion in crafting the parenting plan or in awarding Mother sole authority for education and nonemergency healthcare decisions.

## V.    CALCULATION OF FATHER'S PARENTING DAYS

Father asserts that the trial court did not correctly calculate the number of days afforded to him in the newly-adopted parenting plan. Under the new plan, Mother is awarded 277 days per year, and Father 88 days per year. Father argues that a proper calculation reveals that he should have 101 days of parenting time.

The number of days awarded to each parent is a factual determination; however, it should be acknowledged that it is impossible to determine the exact number of days each parent will have to spend with the minor child over the next few years because the length of school holidays changes from year to year. *Rodriguez v. Rodriguez*, No. M2013-02648-COA-R3-CV, 2014 WL 5502397, at *2 (Tenn. Ct. App. Oct. 30, 2014).

Father has failed to adequately explain how the court miscalculated his parenting days and our review of the record does not reveal any error in the trial court's method of calculating Father's parenting time. Moreover, we have calculated the number of days awarded to each parent and determined that the trial court's calculation of Father's days

is correct.[3] Therefore, we affirm the calculation of days in the adopted permanent parenting plan.

## VI. ATTORNEY'S FEES

The trial court ordered Father to pay Mother's attorney's fees and stipulated that the "statutory interest of 5.5% shall be applied to the unpaid balance." Father asserts that the trial court erred by ordering him to pay the attorney's fees and disputes the statutory fixed interest rate. Additionally, Mother seeks to recover her attorney's fees incurred on appeal.

Spouses may recover attorney's fees incurred in actions to enforce decrees for alimony and child support as well as in regard to suits concerning the adjudication or change of custody of a child. *See* Tenn. Code Ann. § 36-5-103(c). The trial court is vested with wide discretion when determining whether to award attorney's fees. *See id.*; *Gonsewski*, 350 S.W.3d at 105. We will not reverse a trial court's decision to award attorney's fees under the statute unless the trial court has abused its discretion. *Huntley v. Huntley*, 61 S.W.3d 329, 341 (Tenn. Ct. App. 2001).

The trial court explained its reasoning for awarding attorney's fees in the Final Order.

14. The Court finds this matter could have been worked out, as the parties have been following this plan since 2012, but the Court finds that because of Father's pride this litigation has been extended. The Court finds that this matter involved child support and the adjudication of custody and therefore, pursuant to T.C.A. 36-5-103(c), the Court finds Mother's request for attorney's fees is warranted and the Court awards Mother her attorney's fees she has incurred since the petition was filed. Mother's attorney shall submit to the Court an application for fees.

Mother filed her Petition in April 2015. After numerous delays by Father, including his refusal to provide proof of income so that child support could be properly calculated, this matter was finally heard in September 2016. The trial court granted Mother's Petition to Modify Permanent Parenting Plan and Child Support after hearing lengthy testimony from both parents. Because Mother prevailed on her petition, and having reviewed the record and considered the relevant factors to this issue, we have concluded the trial court did not abuse its discretion in awarding attorney's fees to

---

[3] The calculation is based on the schedule for Wilson County Schools. Using a 2017 calendar, we arrive at 88 days by counting Memorial Day weekend, Father's Day weekend, Labor Day weekend, five days for fall break, eight days for Christmas break, three days for spring break (rounded up from 2.5 days), 20 days for summer vacation, and two days every other weekend.

Mother. Thus, we affirm the trial court's decision to award Mother her attorney's fees and costs incurred in the trial court.

We now turn to Father's challenge of the trial court's assessment of interest to the attorney's fees awarded. Tenn. Code Ann. § 47–14–122 provides that "[i]nterest *shall be computed on every judgment* from the day on which the jury or the court, sitting without a jury, returned the verdict without regard to a motion for a new trial." (Emphasis added.) "Courts do not have discretion about whether to award interest on judgments; it is required by the statute." *Cardle v. Cardle*, No. M2016-00862-COA-R3-CV, 2017 WL 2188534, at \*8 (Tenn. Ct. App. May 17, 2017); *see also Vooys v. Turner*, 49 S.W.3d 318, 321–22 (Tenn. Ct. App. 2001)(stating that statute requires courts to add post-judgment interest to judgments). Tenn. Code Ann. § 47-14-121 specifies what these interest rates shall be, depending on when the judgment was entered.

> (a) Except as set forth in subsection (c), the interest rate on judgments per annum in all courts, including decrees, shall:
> (1) For any judgment entered between July 1 and December 31, be equal to two percent (2%) less than the formula rate per annum published by the commissioner of financial institutions, as required by § 47-14-105, for June of the same year; or
> (2) For any judgment entered between January 1 and June 30, be equal to two percent (2%) less than the formula rate per annum published by the commissioner of financial institutions, as required by § 47–14–105, for December of the prior year.

*Id.* The statute goes on to direct the Administrative Office of the Courts to "calculate the interest rate on judgments that applies for the new six-month period pursuant to subsection (a)" and to "publish that rate on the administrative office of the courts' web site." Tenn. Code Ann. § 47–14–121(b)(1)–(2).

Here, the trial court entered the Final Order directing Father to pay Mother's attorney's fees on December 7, 2016. According to the Administrative Office of the Courts' website, the applicable interest rate for judgments entered between July 1 and December 31, 2016, is 5.5% per annum. *See* https://www.tncourts.gov/node/1232344. Thus, we affirm the trial court's award of the 5.5% statutory interest rate applied to Mother's award of attorney's fees.

Finally, Mother seeks to recover her attorney's fees incurred on appeal. Whether to award attorney's fees on appeal is within this court's sole discretion. *Wills v. City of Memphis*, 457 S.W.3d 30, 51 (Tenn. Ct. App. 2014) (citing *Archer v. Archer*, 907 S.W.2d 412, 419 (Tenn. Ct. App. 1995)). Mother has prevailed on all issues on appeal, and we find it was reasonable and necessary for Mother to oppose Father's appeal. Thus, we conclude that Mother is entitled to recover the reasonable and necessary attorney's fees

she incurred on appeal. Accordingly, we remand with instructions for the trial court to determine the amount she is entitled to recover and make an appropriate award.

## IN CONCLUSION

The judgment of the trial court is affirmed, and this matter is remanded with costs of appeal assessed against Daniel Steakin.

_____
FRANK G. CLEMENT JR., P.J., M.S.